UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

JOHN DOE                                          CIVIL ACTION

VERSUS                                            NO. 26-35-SDJ

BOARD OF SUPERVISORS OF                           CONSENT
LOUISIANA STATE UNIVERSITY
AND A&M COLLEGE, ET AL

<hr>

## ORDER

This matter came before the Court on Plaintiff's Motion for Summary Judgment (R. Doc. 16) and Defendant's Cross Motion for Summary Judgment (R. Doc. 21). The Court heard oral argument on May 29, 2026, from counsel for the parties. Before oral argument, the parties stipulated that the record was complete, and all necessary evidence had been submitted to the Court in order to make a final judgment. Given the expedited nature of this case, the parties agreed to have the Court make a final determination on the record, with the subsequent issuance of a written opinion setting forth written reasons for its ruling on Plaintiff's Motion for Summary Judgment and Defendant's Cross-Motion for Summary Judgment. After hearing oral arguments, the Court denied Plaintiff's Motion for Summary Judgement (R. Doc. 16) and granted Defendant's Cross Motion for Summary Judgement (R. Doc. 21). The written reasons for the Court's ruling now follow.

### I.    Background

On July 16, 2024, the LSU Police Department informed the LSU Office of Civil Rights and Title IX (LSU Title IX Office) that a student ("Complainant") made a report against Plaintiff to the East Baton Rouge Parish Sheriff's Office.[1] On August 1, 2024, LSU's "Title IX

<hr>

[1] R. Doc. 21-8 at 2.

Coordinator" filed a formal complaint against Plaintiff and issued a "Notice of Investigation and Allegation," informing Plaintiff that the LSU Title IX Office was investigating allegations that Plaintiff had violated PM-73 by engaging in conduct that met the definition of Sexual Exploitation.[2] According to the complaint, Plaintiff utilized a hidden video camera to record images of Complainant without the Complainant's consent while they engaged in sexual intercourse.[3] The Complainant reported multiple incidents of sexual exploitation that occurred both on and off campus.[4] The NOIA (provided to Plaintiff) included a copy of PM-73, last revised on January 19, 2022.[5]

On August 27, 2024, Complainant filed a formal complaint against Plaintiff with the LSU Title IX Office.[6] A second NOIA was then issued to Plaintiff, along with another copy of PM-73, informing Plaintiff that the Title IX Office was investigating the complaint to determine whether Plaintiff had violated PM-73 by "engaging in conduct against complainant that met the definition of Sexual Exploitation" (under PM-73).[7] Both formal complaints were consolidated on January 28, 2025, and a "Notice of Consolidation of PM-73 Complaints" was issued to Plaintiff on that date.[8]

An investigation of the consolidated complaints was conducted by Jayson Santos and Travis Houston, initially, and (after February 2025) by Mr. Houston.[9] Interviews, including an interview with Plaintiff on February 17, 2025, were conducted by LSU's Title IX Investigator(s).[10]

---

[2] R. Doc. 21-8 at 2; R. Doc. 23 at 1.
[3] R. Doc. 21-2.
[4] R. Doc. 21-2.
[5] R. Doc. 21-1.
[6] R. Doc. 21-8 at 2.
[7] R. Doc. 21-8 at 2; R. Doc. 23 at 1.
[8] R. Doc. 21-8 at 2; R. Doc. 23 at 1.
[9] R. Doc. 21-8 at 2.
[10] R. Doc. 21-8 at 2.

On February 27, 2025, Plaintiff provided written responses to follow-up questions from the Title IX Investigators.[11] On March 6, 2025, the Title IX Investigator conducted a follow-up interview with Complainant.[12] Plaintiff provided written responses to additional follow-up questions from the Title IX Investigator on March 14, 2025, and, on March 17, 2025, Complainant provided additional documentation.[13]

On April 11, 2025, a preliminary investigation report was forwarded to Plaintiff and Complainant.[14] Both parties were given the opportunity to review and provide feedback on the preliminary report and its exhibits within 10 business days of receipt.[15] The Final Investigation Report was forwarded to the parties, including Plaintiff, on April 29, 2025.[16]

On October 8, 2025, Ms. Lynette Roberson, an Administrative Law Judge with the Louisiana Division of Administrative Law serving as the Hearing Panel Chair, conducted a prehearing conference by videoconference.[17] Plaintiff's Advisor participated and represented Plaintiff at the prehearing conference.[18] Neither the parties, nor their advisors (including Plaintiff's Advisor) objected to the composition of the Hearing Panel.[19] On October 13, 2025, a formal resolution hearing was conducted by videoconference before the Hearing Panel, which consisted of Ms. Roberson, Maribel Dietz, and Kevin Breaux. Present for the hearing were: Ms. Matthews (Title IX Case Manager); Mr. Houston (Title IX Investigator); Complainant; Complainant's Advisor; Plaintiff (Respondent); and Respondent's Advisor.[20] Prior to the hearing, the parties, their

---

[11] R. Doc. 21-8 at 2.
[12] R. Doc. 21-8 at 2.
[13] R. Doc. 21-8 at 2.
[14] R. Doc. 21-8 at 3; R. Doc. 23 at 1.
[15] R. Doc. 21-8 at 3.
[16] R. Doc. 21-2; R. Doc. 23 at 1.
[17] R .Doc. 21-8 at 3; R. Doc. 23 at 2.
[18] R. Doc. 21-8 at 3.
[19] R. Doc. 21-8 at 3.
[20] R. Doc. 21-8 at 3; a recording of the video conference was submitted to the Court for review.

advisors and the Hearing Panel members were provided with a copy of the Final Investigation Report and its exhibits.

The formal resolution hearing was conducted pursuant to the policies and procedures set forth in PM-73 and in accordance with La. R.S. 17:3394.[21] On October 20, 2025, the Hearing Panel issued its determination imposing a one-year suspension from LSU on Plaintiff (the "Determination").[22] The Determination advised Plaintiff of his "Right to Appeal" under PM-73 along with an "exhaustive list of the bases for appeal."[23]

Plaintiff submitted a timely appeal of the Determination.[24] Pursuant to PM-73, his appeal was reviewed by Appeals Reviewer Brock Avery, an employee of the Louisiana Division of Administrative Law and a member of the LSU "Office of Civil Rights and Title IX's Formal Resolution Pool." Mr. Avery reviewed both the Record and Plaintiff's appeal and decided to uphold the Hearing Panel's findings and sanctions, including the one-year suspension period.[25] Plaintiff was notified of the Appeals Reviewer's decision by letters from Osvaldo Gomez to Plaintiff, dated November 24, 2025.[26]

Plaintiff filed a "Verified Petition for Temporary Restraining Order, Preliminary Injunction and Permanent Injunction" in the 19th Judicial District Court on December 30, 2025, which was removed to this Court on January 9, 2026, by LSU.[27] There are no temporary restraining orders or injunctions presently in force or effect, and Plaintiff's suspension (from LSU) commenced on January 1, 2026, and remains in effect at the present time.

---

[21] R. Doc. 21-8 at 3; R. Doc. 23 at 2.
[22] R. Doc. 21-3; R. Doc. 23 at 2.
[23] R. Doc. 21-3 at 19.
[24] R. Doc. 21-4; R. Doc. 23 at 2.
[25] R. Doc. 21-5.
[26] R. Doc. 21-6; R. Doc. 21-7; R. Doc. 23 at 2.
[27] R. Doc. 1.

Plaintiff filed a Motion for Summary Judgment on May 5, 2026. LSU filed a Cross-Motion for Summary Judgment on May 22, 2026. Plaintiff filed a Response in Opposition to Defendant's Cross-Motion on May 26, 2026.[28]

## II.    Issues Raised

Plaintiff moved for Summary Judgment seeking a declaration that LSU's process under PM-73, as applied, violated his procedural due process rights under the United State Constitution, Amendments V and XIV, and Louisiana Constitution.[29] Plaintiff argued that LSU's process under PM-73 violated his due process rights because the process: 1) lacked jurisdiction over Complainant's allegations, 2) failed to provide timely and clear notice, 3) denied Plaintiff the right to confront and cross-examine witnesses, 4) commingled investigative, prosecutorial, and adjudicative functions, 5) undermined impartiality through the selection of the disciplinary Hearing Panel, and 6) denied Plaintiff the lack of meaningful appeal or judicial review.[30] Plaintiff further argues that the process violated his substantive due process rights because LSU's actions were not merely procedurally deficient, but so arbitrary and egregious as to constitute an abuse of government power.[31] "The entire disciplinary process experienced by the plaintiff constituted an unjustified violation of the Constitution. Defendant, a government entity, asserted excessive powers in this case to disproportionately strip plaintiff of his constitutional rights to liberty and property."[32]

---

[28] R. Doc. 26.
[29] R. Doc. 17 at 1.
[30] R. Doc. 17 at 5; R. Doc. 26 at 2; R. Doc. 26 at 4.
[31] R. Doc. 26 at 5.
[32] R. Doc. 26 at 5.

### III.    Law and Analysis

### a.  Summary Judgment Standard

Pursuant to well-established legal principles, summary judgment is appropriate where there is no genuine disputed issue as to any material fact, and the moving party is entitled to judgment as a matter of law. Rule 56, Federal Rules of Civil Procedure. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986). A party moving for summary judgment must inform the Court of the basis for the motion and identify those portions of the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, that show that there is no such genuine issue of material fact. *Celotex Corp. v. Catrett, supra*, 477 U.S. at 323.

If the moving party carries its burden of proof under Rule 56, the opposing party must direct the Court's attention to specific evidence in the record which demonstrates that the non-moving party can satisfy a reasonable jury that it is entitled to a verdict in its favor. *Anderson v. Liberty Lobby, Inc., supra*, 477 U.S. at 248. This burden is not satisfied by some metaphysical doubt as to alleged material facts, by unsworn and unsubstantiated assertions, by conclusory allegations, or by a mere scintilla of evidence. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). Rather, Rule 56 mandates that summary judgment be entered against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett, supra*, 477 U.S. at 323.

Summary judgment is appropriate in any case where the evidence is so weak or tenuous on essential facts that the evidence could not support a judgment in favor of the non-moving party. *Little v. Liquid Air Corp., supra*, 37 F.3d at 1075. In resolving a motion for summary judgment, the Court must review the facts and inferences in the light most favorable to the non-moving party,

and the Court may not evaluate the credibility of witnesses, weigh the evidence, or resolve factual

disputes. *International Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263 (5th Cir. 1991).

### b. Procedural Due Process

In *Plummer v. University of Houston*, 860 F.3d 767, 772-773, the Fifth Circuit held:

> "It is not the role of the federal courts to set aside decisions of school administrators which the Court may view as lacking in wisdom or compassion." *Wood v. Strickland*, 420 U.S. 308, 326, 95 S. Ct. 992, 43 L. Ed. 2d 214 (1975); see also *Davis ex rel. LaShonda D. v. Monroe Cty. Bd. Of Educ.,* 526 U.S. 629, 648, 119 S.Ct. 1661, 143 L.Ed.2d 839 (1999) ("[C]ourts should refrain from second-guessing the disciplinary decisions made by school administrators.") "A university is not a court of law, and it is neither practical nor desirable it be one." *Flaim v. Med. Coll. Of Ohio,* 418 F.3d 629, 635 n. 1 (6th Cir. 2005) (citation omitted). Ultimately, courts must focus on "ensuring the presence of fundamentally fair procedures to determine whether the misconduct has occurred." Id. at 634 (quoting *Goss v. Lopez*, 419 U.S. 565, 574, 95 S.Ct. 729, 42 L. Ed. 2d 725 (1975).

In *Plummer, supra*, the Fifth Circuit further held that:

> "Generally the amount of process due in university disciplinary proceedings is based on a sliding scale that considers three factors: (a) The student's interests that will be affected; (b) the risk of an erroneous deprivation of such interests through the procedures used and the probable value, if any, of additional or substitute procedural safeguards; and (c) the university's interests, including the burden that additional procedures would entail. See *Mathews v. Eldridge*, 424 U.S. 319, 335, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976). In *Goss v. Lopez*, the Supreme Court held that an informal give-and-take between a high school student and the administrator afforded sufficient process preceding a temporary suspension. 419 U.S. at 584, 95 S.Ct. 729. The Court specified, however, that "[l]onger suspensions or expulsions for the remainder of the school term, or permanently, may required more formal procedures." *Id*. This Court has held that "due process requires notice and some opportunity for hearing before a student at a tax-supported college is expelled for misconduct." *Dixon v. Ala. State Bd. Of Educ.*, 294 F.2d 150, 158 (5th Cir. 1961). [T]he interpretation and application of the Due Process Clause are intensely practical matters and… 'the very nature of due process negates any concept of inflexible  procedures universally applicable to every imaginable situation.'" *Goss*, 419 U.S. at 578, 95 S.Ct. 729 (alteration omitted) (quoting *Cafeteria Workers v. McElroy*, 367 U.S. 886, 895, 81 S.Ct. 1743, 6 L.Ed.2d 1230 (1961). "The nature of the hearing should vary depending upon the circumstances of the particular case." *Dixon*, 294 F.2d at 158.

"In procedural due process claims, the deprivation by state act of a constitutionally protected interest in 'life, liberty or property', is not in itself unconstitutional; what is unconstitutional is the deprivation of such an interest without due process of law." *Zinermon v. Burch*, 494 U.S. 113, 125 (1990). "To prevail on a [procedural] due process claim, plaintiffs must [therefore] show that: (1) they possess a property interest that is protected by the due process clause, and (2) [the defendant's] procedures are constitutionally inadequate. *Ridgely v. Fed. Emergency Mgmt. Agency*, 512 F.3d 727, 734 (5th Cir. 2008).

### c.  Substantive Due Process

Substantive due process, on the other hand, "ensures that, regardless of the fairness of the procedures used, the government does not use its power for oppressive purposes." *Patterson v. Def.POW/MIA Acct. Agency*, 343 F.Suppl. 3d 637, 646 (W.D. Tex 2018) (citing *Daniels v. Williams*, 474 U.S. 327, 331 (1986)). Thus, "substantive due process requires only that public officials exercise professional judgment, in a nonarbitrary and noncapricious manner, when depriving an individual of a protected property interest." *Lewis vs. University of Texas Med. Branch at Galveston*, 665 F.3d 625, 631 (5th Cir. 2011) (citing *Texas v. Walker*, 142 F.3d 813, 819 (5th Cir. 1998)).

### d.  Analysis

#### i.  Pursuant to PM-73, LSU did have jurisdiction over the alleged sexual misconduct.

The Court finds that Defendant did have jurisdiction under LSU PM-73. The Court finds that PM-73 *expressly* prohibits "Sexual Exploitation" and "sexual misconduct" as defined by the policy and *expressly* extends jurisdiction to the conduct that occurred off-campus:

> Sex- or gender-based harassment and discrimination have broad jurisdiction that includes all Title IX allegations, but also many more allegations that involve possible sex- or gender-based harassment or discrimination that do not rise to the level of a Title IX violation. If the sex- or gender-based

harassment or discrimination does not meet Title IX jurisdictional requirements, then the allegation is "dismissed" as a Title IX case. The case still may be considered for possible investigation and resolution under this policy or the applicable student code of conduct, employee policies, or other relevant policy or procedure. (i.e. non-sex or gender-based misconduct). Such cases include, but are not limited to:

a. Sex- or gender-based harassment or discrimination that does not meet the required definitions under Title IX;

b. Off-campus or online conduct, social media or other electronic media communication:

    i. The University deems that the off-campus sexual misconduct effectively deprives someone of access to LSU's educational programs or employment;

    ii. The Title lX Coordinator, in their discretion, exercises jurisdiction, such as when the Sexual Misconduct may affect the safety or wellbeing of the LSU community

c. lnstances of power-based violence that are independent of sexual misconduct.[33]

Furthermore, this Court has already reviewed LSU PM-73 in another "John Doe" case involving a student-athlete at LSU, suspended for one year based upon "sexual misconduct." In *John Doe v. Louisiana State University*, 2020 WL 4193473 (M.D. La. 2020) (not reported in Fed Supp), Judge Brian Jackson held as follows:

"Courts assess due process in a university disciplinary proceeding by considering: (1) the student's interests that will be affected, (2) the risk of an erroneous deprivation of such interests through the procedures used and the probable value of additional or substitute procedural safeguards, and (3) the university's interest, including the burden that additional procedures would entail. *Plummer vs. Univ. of Houston*, 860 F.3d 767, 773 (5th Cir. 2017). Here, the court finds that Plaintiff has established, as required by the first factor, that his interest will be affected by LSU's refusal to provide a UHP review. Currently, the Plaintiff is suspended from the University and cannot complete the degree requirements to return to the football team. His interests here cannot be disputed. However, the Court cannot conclude, at this stage that Plaintiff was erroneously deprived of these interests by the procedure used by LSU. As noted, LSU asserts that Plaintiff was provided sufficient due process throughout the disciplinary procedures and that no additional safeguards were warranted. The Court agrees. The evidence presented thus far suggests that the notice LSU provided to Plaintiff, informing him of the allegations and providing him the opportunity to seek UHP review, was clear and unambiguous. Thus, the second factor weighs

---

[33] R. Doc. 21-1 at Page 12; Scope of Policy.

against Plaintiff. The third factor weighs in LSU's favor, as "the University has a strong interest in the educational process, including maintaining a safe learning environment for all its students, while preserving its limited resources." See *Doe v. Univ. of Mississippi*, 361 F.Supp. 3d 597 (S.D. Miss. 2019), quoting *Doe v. Cummings*, 662 F. App'x 437, 466 (6th Cir. 2016). Thus, at this stage of the case, the Court cannot conclude that Plaintiff can demonstrate a due process violations."

In the present case, Plaintiff participated in all aspects of the PM-73 process, including a formal hearing before the PM-73 Hearing Panel and his subsequent appeal of the Hearing Panel's Determination to an "Appeal Reviewer". Considering Judge Jackson's determination that the process afforded the other "John Doe", including a denial of a formal hearing on timeliness grounds under PM-73, did not constitute a "due process violation", neither did the process afforded to Plaintiff in the present case before this Court.

### ii. Plaintiff was provided sufficient and adequate notice.

This Court finds that Plaintiff was provided sufficient and adequate notice of the charges against him, such that he was allowed a meaningful opportunity to participate in the process of challenging those charges.  Likewise, this Court finds that the passage of time from Complainant's filing of allegations with LSU to the conclusion and resolution of the disciplinary process does not constitute a violation of Plaintiff's due process rights. Plaintiff was provided with the following notices and opportunities to present his defenses and be heard:

> a) Plaintiff was sent a Notice of Investigation and Allegation (NOIA) on August 1, 2024;
> b) A second NOIA was issued to Plaintiff on December 20, 2024;
> c) Both NOIAs included a copy of LSU PM-73;
> d) The formal complaints against Plaintiff were consolidated on January 28, 2025, and Plaintiff was issued a "Notice of Consolidation of PM-73 complaints" that date;
> e) Plaintiff was interviewed on February 17, 2025, he provided written responses to follow-up questions from the Title IX Investigator(s) on February 27, 2025, and he provided written responses to additional follow-up questions on March 14, 2025;
> f) Plaintiff was provided a "preliminary investigation report on April

11, 2025 and was provided the opportunity to review it and provide feedback on the preliminary report and its exhibits within ten (10) business days of receipt;

g) Plaintiff was sent the Final Investigation Report on April 29, 2025.

h) A prehearing conference was held on October 8, 2025 by videoconference. Plaintiff's advisor participated in this conference;

i) A formal hearing was held on October 13, 2025 by videoconference. Plaintiff and his Advisor participated in this Hearing; which was recorded. The hearing was conducted as set forth in PM-73 and in accordance with La. R.S. 17:3394. The Hearing Panel Chair, Lynette Roberson, is not employed by LSU.

j) The Hearing Panel issued its Determination on October 20, 2025, and its Determination included notice to Plaintiff of his right to appeal under PM-73;

k) On October 31, 2025, Plaintiff submitted his "Louisiana State University T IX Appeal Request Form;

l) On November 24, 2025, Appeals Reviewer Brock Avery issued his Appeal Decision, which was forwarded to Plaintiff by Osvaldo Gomez, Associate Vice President for Civil Rights and Title IX Coordinator, that same date. Mr. Avery is not employment LSU; and,

m) On November 24, 2025, Mr. Gomez sent Plaintiff correspondence, notifying Plaintiff that his suspension would commence on January 1, 2026 and remain in effect for one calendar year until January 1, 2027.

The process afforded (under PM-73) and fully utilized by Plaintiff far exceeds the process afforded to the other "John Doe" in the case decided by Judge Jackson. It far exceeds the due process discussed and required under the federal law and the decisions of the U.S. Supreme Court and Fifth Circuit U.S. Court of Appeals cited above.

### iii. Plaintiff was afforded the right to cross-examine the Complainant.

A student subject to school disciplinary proceedings is entitled to some procedural due process. *Esfeller v. O'Keefe*, 391 F. App'x 337, 342 (5th Cir. 2010) (citing *Goss v. Lopez*, 419 U.S. 565, 574, 95 S.Ct. 729, 42 L.Ed.2d 725 (1975)). The student must be given notice of the charges against him, an explanation of what evidence exists against him, and "an opportunity to present his side of the story." *Id.* at 581, 95 S.Ct. 729. The student is not entitled to the "opportunity to secure counsel, to confront and cross-examine witnesses supporting the charge, or to call his own

witnesses to verify his version of the incident." *Id*. at 583, 95 S.Ct. 729. Here, Plaintiff was given the opportunity to ask the Complainant questions, had an advisor present, was given an explanation of the charges against him, was given a copy of the Investigative Report, was given the opportunity to make an Impact statement, was given the opportunity to ask questions of the Investigator, and was given opportunity to be heard at the hearing. The record is clear and unequivocal; Plaintiff was given the opportunity to question the Complainant. Although Plaintiff points out that the Complainant refused to answer certain questions, neither Plaintiff nor Plaintiff's advisor objected to the non-responsiveness of Plaintiff's answer, nor did Plaintiff's advisor attempt to compel Plaintiff to answer in any way.[34] The cross-examination that was indeed afforded to Plaintiff did not violate or deprive Plaintiff of his Constitutional due process rights.

### iv. The investigative, prosecutorial and adjudicative roles performed pursuant to LSU PM-73 did not violate Plaintiff's due process rights.

Plaintiff argues that his due process rights were violated because LSU commingled investigative, prosecutorial, and adjudicative functions in resolving this matter. This Court finds that Plaintiff's argument has no merit. PM-73 expressly provides for the role of the Investigator and for the presentation of the case by LSU. PM-73 also expressly provides for the adjudicative process and the process for the selection of the Hearing Panel. The Court is unaware of any evidence that any role-player acted outside of the scope of their role that is expressly provided for under PM-73.

Furthermore, this Court looks to the Court's decision in *Plummer* as instructive here. In *Plummer*, the University of Houston found two former students, Ryan McConnell and Natalie Plummer, to have violated the University's sexual misconduct policy. Richard Baker, the Vice President of the University's Office of Equal Opportunity Services, investigated the incident in

---

[34] Plaintiff's advisor did not object to Plaintiff's non-responsiveness and did not seek for the Hearing Panel Chair to compel an answer or direct Complainant to respond.

question. Both McConnell and Plummer met with Baker to discuss the incident and provide their side of the story.

The University provided both McConnell and Plummer with a formal, written declaration of the various allegations against them on September 30, 2013. Each student retained counsel, who formally responded to the charges and accompanied McConnell and Plummer to meetings with Baker. After completing his investigation, Baker authored a report with his findings. Pursuant to the University's procedures, each student appealed Baker's findings to a four-person panel of University personnel. Baker, an attorney, presented his findings to the panel, including by testifying about his investigation and providing a packet of investigatory materials. He called two witnesses at McConnell's hearing—two University police officers who responded to and investigated the incident—and none at Plummer's hearing. An additional University EOS attorney was present at each hearing to advise the panel.

McConnell and Plummer claimed that Baker's multiple roles created impressible conflicts. They argued that Baker's dual role as victim advocate and investigator prevented him from impartially investigating the incident, and that EOS's role in advising the panel created a conflict of interest. In *Plummer*, the Court held that "McConnell and Plummer have not demonstrated that Baker's dual roles amount to a constitutional violation … McConnell and Plummer fail to show how any of these alleged impermissible conflicts undermined the integrity of their proceedings." 860 F.3d at 776.

Here, an investigation of the consolidated complaints was conducted by Jayson Santos and Travis Houston, initially, and (after February 2025) by Mr. Houston.[35] Interviews, including an interview with Plaintiff on February 17, 2025, were conducted by LSU's Title IX Investigator(s).[36]

---

[35] R. Doc. 21-8 at 2.
[36] R. Doc. 21-8 at 2.

On February 27, 2025, Plaintiff provided written responses to follow-up questions from the Title IX Investigators.[37] On March 6, 2025, the Title IX Investigator conducted a follow-up interview with Complainant.[38] Plaintiff provided written responses to additional follow-up questions from the Title IX Investigator on March 14, 2025, and, on March 17, 2025, Complainant provided additional documentation.[39] On April 11, 2025, a preliminary investigation report was forwarded to Plaintiff and Complainant.[40] Both parties were given the opportunity to review and provide feedback on the preliminary report and its exhibits within 10 business days of receipt.[41] The Final Investigation Report was forwarded to the parties, including Plaintiff, on April 29, 2025.[42]

On October 13, 2025, a formal resolution hearing was conducted by videoconference before the Hearing Panel, which consisted of Ms. Roberson, Maribel Dietz, and Kevin Breaux. Mr. Houston testified at the hearing regarding his Investigation and Investigation Report. Prior to the hearing, the parties, their advisors, and the Hearing Panel members were provided with a copy of the Final Investigation Report and its exhibits. This Court finds that the majority opinion in *Plummer* precludes a finding that the merging of investigate/prosecutorial roles by Mr. Houston and the "wearing of multiple hats" in the instant case would be a violation of due process.

### v. Plaintiff provides no evidence to support impartiality or bias on the part of the adjudicators.

A decisionmaker is unconstitutionally biased when he "has a pecuniary interest in the outcome" or "has been the target of personal abuse or criticism from the party" under scrutiny. *Dung Quoc Pham v. Blaylock*, 712 F. App'x 360, 363–64 (5th Cir. 2017) (citing *Withrow*, 421 U.S.

---

[37] R. Doc. 21-8 at 2.
[38] R. Doc. 21-8 at 2.
[39] R. Doc. 21-8 at 2.
[40] R. Doc. 21-8 at 3.
[41] R. Doc. 21-8 at 3.
[42] R. Doc. 21-2.

at 47, 95 S.Ct. 1456.) To prove bias, Plaintiff must "overcome a presumption of honesty and integrity in those serving as adjudicators[.]" *See id*.

Under PM-73, the purpose of the pre-hearing conference shall be to "identify the panelists and address any objections to the members of the Hearing Panel".[43] There is nothing in the record to indicate that any objection to the Hearing Panel was made at the pre-hearing conference or at any time prior to the formal disciplinary hearing. There is no evidence in the record to suggest any bias or impartiality on the part of any Hearing Panel member. Furthermore, an issue with the impartiality of the Hearing Panel is an express ground for appeal under PM-73,[44] and that issue was not raised on appeal. Plaintiff provides no evidence to "overcome the presumption of honesty or integrity" of those serving on the Hearing Panel.

### vi. Plaintiff was provided a meaningful appeal.

Plaintiff was not denied meaningful appeal or judicial review. Plaintiff submitted a timely appeal of the Determination. Pursuant to PM-73, his appeal was reviewed by Appeals Reviewer Brock Avery, an employee of the Louisiana Division of Administrative Law and a member of the LSU "Office of Civil Rights and Title IX's Formal Resolution Pool." Mr. Avery reviewed both the Record and Plaintiff's appeal and decided to uphold the Hearing Panel's findings and sanctions, including the one-year suspension period. Plaintiff was notified of the Appeals Reviewer's decision by letters from Osvaldo Gomez to Plaintiff, dated November 24, 2025.

## IV.    Conclusion

The Court finds that there was no erroneous deprivation of Plaintiff's interests through the procedures used by LSU under PM-73. The Plaintiff was afforded multiple meaningful

---

[43] R. Doc. 21-1 at 28.
[44] The following is listed as a bases for appeal: "The Title XI Coordinator, Investigator, Decision-Maker, or Hearing Panel members had a conflict of interest or bias for or against complainants or respondents generally …" R. Doc. 21-1 at 33.

opportunities to challenge LSU's allegations, evidence, and findings. Additionally, given the factual evidence presented to the Hearing Panel, this Court finds that the conclusions of the Hearing Panel and Appeals Reviewer were not arbitrary and capricious or lacking any basis in fact so as to deprive Plaintiff of his Constitutional due process rights. The findings of the Hearing Panel and the sanctions imposed did not dramatically depart from the record presented so as to violate Plaintiff's Constitutional due process rights. Even if this Court believes that the decisions of the Hearing Panel and Appeals Reviewer are "lacking in wisdom or compassion," such is not a basis or justification for overturning these decisions. Plaintiff was afforded procedural and substantive "due process" as evidenced by the Record, and, as a matter of law, LSU is entitled to the entry of summary judgment in its favor, dismissing Plaintiff's suit and claims, with prejudice and at Plaintiff's cost. Accordingly, and for the same reasons, Plaintiff's motion for summary judgment must be denied.

Accordingly,

**IT IS ORDERED** that Plaintiff's Motion for Summary Judgment (R. Doc. 16) is **DENIED.**

**IT IS FURTHER ORDERED** that Defendant's Cross Motion for Summary Judgment (R. Doc. 21) is **GRANTED,** and all claims against Defendant are **DISMISSED WITH PREJUDICE.**

Signed in Baton Rouge, Louisiana, on July 14, 2026.

_____

**SCOTT D. JOHNSON**
**UNITED STATES MAGISTRATE JUDGE**